UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK CHOMOS,

            Plaintiff,          Civil Action No. 15-10103
v.                                        Honorable Robert H. Cleland
                                               Magistrate Judge David R. Grand

WOODHAVEN POLICE DEPARTMENT,
FRANK ZDANKIEWICZ, RYAN SMITH,
BRIAN BAKER, LIEUTENANT TOTH,
DETECTIVE BURST, BRYAN WHEELER,
JONATHAN SMITH, BRYAN RAMSEY,
CITY OF WOODHAVEN,
and MICHAEL GRAHAM,

           Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT THE TOWNSHIP DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [92]

Before the Court is a Motion for Summary Judgment filed on November 30, 2015 by Brownstown Township Police Department Defendants Bryan Wheeler, Jonathan Smith, and Brian Ramsey (collectively the "Township Defendants"). (Doc. #92). *Pro se* Plaintiff Mark Chomos ("Chomos") filed a response to this motion on March 14, 2016 (Docs. #105, 111), and the Township Defendants filed a reply on March 24, 2016 (Doc. #106). An Order of Reference was entered on March 23, 2015, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #20).

Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.      REPORT**

   **A.      Chomos' Third Amended Complaint**

Chomos is a State of Michigan prisoner who is currently confined at the Saginaw Correctional Facility on charges unrelated to the events at issue in this case. He brings this civil rights action pursuant to 42 U.S.C. §1983 against the Township Defendants, as well as the Woodhaven Police Department and some of its officers, alleging generally that the defendants used excessive force in violation of the Fourth and Fourteenth Amendments to the United States Constitution when they used a taser to subdue him as he was resisting an officer. (Doc. #57). Chomos seeks in excess of $300,000 in damages as a result of the physical and emotional injuries he allegedly suffered. (*Id.* at 4, 21).

   **B.      Factual Background**

      *1.      Actions of the Woodhaven Defendants*

The instant action arises out of Chomos' arrest, on April 13, 2014, by Woodhaven Police Sergeant Frank Zdankiewicz and Woodhaven Patrol Officers Ryan Smith and Brian Baker (collectively referred to as the "Woodhaven Defendants"). On that date, the Woodhaven Defendants responded to a complaint from Millie's Family Restaurant, located in the City of Woodhaven, Michigan, regarding an unwanted person in the restaurant. (Doc. #92-2 at 2). Upon arrival, the Woodhaven Defendants learned that the subject – later identified as Chomos – had left the premises. (*Id.*).

After conducting a brief search of the area, Sergeant Zdankiewicz located Chomos in the rear parking lot of a nearby McDonald's. (*Id.*). As Sergeant Zdankiewicz entered the parking lot, Chomos immediately recognized the unmarked police car and ran and hid behind a parked vehicle; he had outstanding warrants and admittedly did not want to go back to jail. (Doc. #92-3

at pp. 35, 42-43). When Sergeant Zdankiewicz exited his vehicle and attempted to make contact with Chomos, Chomos quickly jumped to his feet and a foot pursuit ensued. (*Id.* at pp. 38-40). Sergeant Zdankiewicz chased Chomos as he ran across the parking lot and attempted to tackle him by placing his arms around Chomos' upper torso. (*Id.* at p. 40). Despite Sergeant Zdankiewicz's attempt to restrain Chomos, Chomos refused to submit, instead proceeding to climb a four-foot wall, run through an adjacent schoolyard, scale a seven-foot fence, and enter an adjoining condominium complex, where he lodged himself underneath a deck in an attempt to hide from police. (*Id.* at pp. 38-40, 43-44).

Chomos asserts that, after he had been hiding under the deck for approximately five minutes, Officer Smith arrived and ordered him to come out from under the deck. (*Id.* at pp. 44, 46). According to Chomos, he informed the Woodhaven Defendants that he was stuck under the deck, and they threatened to tase him if he did not come out. (*Id.* at p. 46). Subsequently, Officer Smith deployed his taser and the Woodhaven Defendants pulled Chomos out from under the deck. (*Id.* at pp. 46, 48). Chomos claims that he immediately crossed his arms over his chest to "cover up," while the Woodhaven Defendants repeatedly instructed him to "stop resisting." (*Id.* at p. 49). The Woodhaven Defendants continued to attempt to physically restrain him, and in the process, Officer Baker deployed three to five taser strikes to the common peroneal of his right leg. (Doc. #92-2 at 9). Sergeant Zdankiewicz and Officer Smith then "drive stunned" him several times until the Woodhaven Defendants were ultimately able to gain control of Chomos and take him into custody. (*Id.* at 9-10; Doc. #111 at 13).

### 2. *Actions of the Township Defendants*

The Township Defendants were dispatched to the scene in response to a request for assistance from the Woodhaven police. (Doc. #92-4). Officer Wheeler was the first of the

Township Defendants to arrive on the scene; he testified that, when he arrived, Chomos was still lodged beneath the deck. (Doc. #92-5 at 5). As Chomos was pulled out from under the deck, he became combative; as a result, Sergeant Zdankiewicz asked to use Officer Wheeler's taser, as his own taser had been lost during the foot pursuit, and Officer Wheeler complied. (*Id.*; Doc. #92-2 at 10). Officer Wheeler testified that, due to the confined space and location, his view of the struggle was obstructed, and, as a result, he could not see where the taser was applied or the number of times it was applied. (Doc. #92-5 at 5-6). Officer Wheeler also testified that he never laid hands on Chomos and was never actually close enough to Chomos to touch him. (*Id.* at 5). In fact, it is undisputed that *none* of the Township Defendants physically touched Chomos, nor were they involved in apprehending him or effectuating his arrest. To this point, Chomos testified:

> Q. Did you ever see Officer Wheeler?
>
> A. I seen [sic] three officers on the scene that were standing off to the side, but they didn't have – they didn't partake in the – none of the rest.
>
> Q. Fair to state that none of the Brownstown Township police officers ever laid hands on you?
>
> A. Yes, ma'am.
>
> Q. It's true?
>
> A. Yes, it's true. They never touched me.

(Doc. #92-3 at pp. 51-52).

In his Third Amended Complaint, Chomos sues the Township Defendants in their individual capacities,[1] alleging that they failed to intervene to prevent or stop the Woodhaven

---

[1] Chomos also sues the Township Defendants in their official capacities. In their motion for summary judgment, however, the Township Defendants argue that these official capacity claims fail because Chomos has not alleged facts that show that the Township maintained an official

4

Defendants' use of excessive force, in violation of the Fourth and Fourteenth Amendments.[2]

### C. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In

---

custom or policy that caused the alleged constitutional violation. (Doc. #92 at 18-19). In response, Chomos concedes that dismissal of his official capacity claims against the Township Defendants is appropriate and, thus, agrees to voluntarily dismiss them. (Doc. #105 at 17). Accordingly, the Township Defendants' summary judgment motion should be granted as to those claims.

[2] Although Chomos claims violations of both the Fourth and Fourteenth Amendments, the Sixth Circuit has recognized that excessive force claims are best analyzed under the Fourth Amendment's protection against unreasonable seizures. *See, e.g., Kostrzewa v. City of Troy*, 247 F.3d 633, 638-39 (6th Cir. 2001). Accordingly, the Court will do so here.

response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted). Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id*. (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id*. at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

### D. Analysis

As set forth above, Chomos alleges that the Township Defendants violated his Constitutional rights when they failed to intervene in the face of the Woodhaven Defendants' alleged use of excessive force. "As a general matter, [an officer's] mere presence during [an] altercation, without a showing of some responsibility, cannot suffice to subject [him] to liability." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Rather, the Sixth Circuit Court of Appeals has identified three circumstances in which a law enforcement official can be held liable for the use of excessive force: when an officer "(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (internal quotations and citations omitted). In this case, where it is undisputed that none of the Township Defendants physically touched Chomos, and were not supervising the Woodhaven Defendants, Chomos can only succeed on his excessive force claim against the Township Defendants if he can establish that they owed him a duty of protection.

To establish that such a duty of care was owed, Chomos must show "that the officer 'observed or had reason to know that excessive force would be or was being used' and 'had both the opportunity and the means to prevent the harm from occurring.'" *Nelson v. Green Oak Twp.*, 2016 WL 233100, at *9 (E.D. Mich. Jan. 20, 2016) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). "In determining whether an officer had both the opportunity and the means to intervene, the Court must determine that the incident being challenged lasted long enough for the officers to 'both perceive what was going on and intercede to stop it.'" *Nelson*, 2016 WL 233100, at *9 (quoting *Turner*, 119 F.3d at 429). Courts have generally been reluctant to impose a duty to intervene where an act of excessive force unfolds "in a matter of seconds." *Pennington v. Terry*, 2016 WL 1127774, at *13 (6th Cir. Mar. 23, 2016) (citing *Ontha v. Rutherford County, Tenn.*, 222 F. App'x 498, 506 (6th Cir. 2007)).

In light of these legal principles, summary judgment is appropriate in favor of the Township Defendants, as there is no evidence that they had the notice, time, opportunity, or means to intervene in the Woodhaven Defendants' alleged use of excessive force. The Township Defendants were called to assist Woodhaven police in the apprehension of Chomos, but their involvement in the incident at issue was, at best, tangential. Officer Jonathan Smith, who was the last officer to arrive on the scene, testified that he did not assist in any manner in apprehending Chomos; indeed, when he first saw Chomos, Chomos was already "standing near a patrol car" in the custody of the Woodhaven Defendants. (Doc. #92-6 at 3, 4; Doc. #92-4 at 2). Chomos presents no evidence to the contrary, saying only that he has a vague recollection of Officer Smith (and others, apparently) "standing off to the side." (Doc. #92-3 at p. 51). Where the Township Defendants have come forward with evidence that Officer Smith was not on the scene at the time of the alleged use of excessive force, and Chomos has pointed to no evidence to

7

the contrary, summary judgment is appropriate as to that defendant.

The same is true with respect to Officer Ramsey; although Chomos testified that he "vaguely remember[ed] officers" some unknown distance away from where the Woodhaven Defendants were tasing him (*Id.* at p. 52), he has offered no admissible evidence that Officer Ramsey was in a position to observe his struggle with the Woodhaven Defendants, or to intervene in that struggle. As such, Chomos cannot succeed on his failure to intervene claim against Officer Ramsey either. *See, e.g., Stephans v. West Bloomfield Twp.*, 2015 WL 6791527, at *7-8 (E.D. Mich. Nov. 6, 2015) (dismissing failure-to-intervene claim where officers "would not have had any reason to know that excessive force was being used" until the end of the incident at issue, leaving "no time for either of them to have had any realistic opportunity to prevent" the use of force).

The analysis is only slightly more complicated with respect to Officer Wheeler, who acknowledges that he allowed Sergeant Zdankiewicz to use his taser.[3] (Doc. #92-5 at 5). There is no dispute that Officer Wheeler was never close enough to Chomos to touch him and never laid hands on him. (*Id.*; Doc. #92-3 at 52). Officer Wheeler explained that he had an obstructed view of the entire incident at issue, due to the confined space and the Woodhaven police officers in front of him. (Doc. #92-5 at 6). He indicated that, as a result, he could not see the specific actions of Chomos or Sergeant Zdankiewicz, including the number of times the taser was deployed or the duration of each drive stun. (*Id.*). Indeed, Officer Wheeler specifically testified that, from his vantage point, the amount of force used by Sergeant Zdankiewicz to subdue

---

[3] In his response to the Township Defendants' motion, Chomos challenges Officer Wheeler's decision to loan his taser to Sergeant Zdankiewicz without "checking to see if [he] was certified to carry a taser …." (Doc. #105 at 2). This argument misses the mark, as it ignores the fact that Sergeant Zdankiewicz had been carrying his own taser, which he dropped during his foot pursuit of Chomos.

8

Chomos did not appear excessive. (*Id.* at 7). Chomos has come forward with no evidence to the contrary: he could not even testify as to the specific location of Officer Wheeler during the struggle, let alone provide evidence that Officer Wheeler observed the amount and type of force being applied and had the opportunity to prevent the alleged use of excessive force.[4] Moreover, Chomos does not even argue, let alone support with any evidence, the notion that Officer Wheeler provided his taser knowing it would be used to commit an act of excessive force.[5] Given these facts, summary judgment is warranted on Chomos' claims against Officer Wheeler as well.[6]

## II.  RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that the Township Defendants' Motion for Summary Judgment (**Doc. #92**) be **GRANTED** and that Chomos' claims against the Township Defendants be dismissed in their entirety and with prejudice.

Dated: June 16, 2016  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
  United States Magistrate Judge

---

[4] Moreover, the so-called "taser download evidence" provided by Chomos undercuts his argument that Officer Wheeler had an opportunity to intervene in Sergeant Zdankiewicz's use of force. (Doc. #111-1 at 58). The taser was deployed four times, for five seconds at a time, the first three of which occurred in rapid succession; realistically, then, even if Officer Wheeler could have seen the use of force, and believed it to be excessive, he would not have had an opportunity to prevent any of these taser strikes. *See Stephans*, 2015 WL 6791527, at *7-8.

[5] If anything, the factual allegations made by Chomos, in which he admits that he had been actively fleeing and resisting Sergeant Zdankiewicz's attempts to apprehend him, suggest that Officer Wheeler acted quite reasonably in providing his taser when he did.

[6] *Bland v. Dush*, 2011 WL 833643 (E.D. Mich. Mar. 4, 2011), a case cited by Chomos, does not compel a different conclusion. In that case, the court found that the plaintiff established a *prima facie* case against an officer on a failure to intervene theory where the officer did not act to stop excessive force "even though she was present and observed [her fellow officer's] actions and had both the opportunity and means to prevent them." *Id.* at *7. In this case, the Court specifically finds just the opposite – that there is no evidence that Officer Wheeler was able to observe Sergeant Zdankiewicz's actions, or that he had the means or opportunity to prevent them. As such, *Bland* is distinguishable.

9

## REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. *See* E.D. Mich. L.R. 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 16, 2016.

                                                s/Eddrey O. Butts
                                                EDDREY O. BUTTS
                                                Case Manager